RECEIVED
OCT 22 2021
Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALL PETROLEUM-PRODUCT CARGO ONBOARD THE M/T NOSTOS WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9258014,<br><br>Defendant. | Case: 1:21–cv–02817<br>Assigned To : Moss, Randolph D.<br>Assign. Date : 10/22/2021<br>Description: Gen. Civ. (E–DECK)<br><br>Civil A. No.<br><br><br>**UNDER SEAL** |

## UNITED STATES' VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff the United States of America (the "United States"), by and through the United States Attorney's Office for the District of Columbia, brings this verified complaint for forfeiture in a civil action *in rem* against the defendant property, namely all petroleum-product cargo (the "Defendant Property") onboard the Motor Tanker ("M/T") NOSTOS (International Maritime Organization ("IMO") No. 9258014) (the "NOSTOS"), and alleges as follows.

### NATURE OF ACTION AND THE DEFENDANT IN REM

1. This *in rem* forfeiture action arises out of an investigation by the Federal Bureau of Investigation ("FBI") and Homeland Security Investigations ("HSI") involving Iran's transportation and sale of oil products to benefit sanctioned Iranian entities. This action seeks to forfeit the Defendant Property, which originated from an oil terminal in Iran where it was loaded onto an Iranian oil tanker and then transferred to other vessels using surreptitious means to hide the Defendant Property's Iranian origin, moving the cargo into commerce by, and for the benefit of, the National Iranian Oil Company ("NIOC"), the National Iranian Tanker Company ("NITC"),

the Islamic Revolutionary Guard Corps ("IRGC") and the IRGC Qods Force ("IRGC-QF"), each of which has been designated by the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC"), located in the District of Columbia.

2. The Defendant Property is subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(1) as foreign assets: (i) of an entity or organization engaged in the planning and perpetrating federal crimes of terrorism as defined in 18 U.S.C. § 2332b(g)(5) against the United States, citizens or residents of the United States, or their property: or (ii) affording a person a source of influence over such entity or organization.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

4. Venue is also proper within this judicial district pursuant to 28 U.S.C. § 1355(b)(2).

5. Pursuant to 14 U.S.C. § 522(a) and 28 U.S.C. § 2461(b), this court has jurisdiction for property subject to forfeiture on the high seas.

## FACTS GIVING RISE TO FORFEITURE

**A. RELEVANT PARTICIPANTS IN THE IRANIAN OIL INDUSTRY**

6. The IRGC is a branch of the Iranian Armed Forces whose purpose is to defend the country's political system. According to OFAC, the IRGC and its major holdings are a dominant presence in Iran's commercial and financial sectors, controlling multi-billion dollar businesses and maintaining extensive economic interests in the oil industry. *See* https://home.treasury.gov/news/press-releases/sm703. On October 13, 2017, OFAC designated the IRGC pursuant to Executive Order ("E.O.") 13,224 for providing material support to the IRGC-QF, including by providing training, personnel, and military equipment. *See* https://www.treasury.gov/press-center/press-releases/Pages/sm0177.aspx.

7.      The IRGC-QF is a branch of the IRGC that specializes in unconventional warfare and military intelligence operations. On October 25, 2007, the Department of the Treasury designated the IRGC-QF pursuant to Executive Order No. 13,224 "for providing material support to the Taliban and other terrorist organizations." *See* https://www.treasury.gov/press-center/press-releases/pages/hp644.aspx.

8.      On April 15, 2019, the U.S. Department of State designated IRGC and its aliases, including IRGC-QF, as a foreign terrorist organization. 84 Fed. Reg. 15278. In its press release, the State Department observed that "the IRGC—most prominently through its Qods Force—has the greatest role among Iran's actors in directing and carrying out a global terrorist campaign." *See* https://2017-2021.state.gov/designation-of-the-islamic-revolutionary-guard-corps/index.html.

9.      IRGC-QF official Rostam Qasemi, AKA Rostam Ghasemi, who previously served as the Iranian Minister of Petroleum from 2011 to 2013, "manages a group of individuals, shipping and oil companies, and vessels to sell Iranian crude, condensates, and gas oil." https://home.treasury.gov/news/press-releases/sm767. On September 4, 2019, OFAC designated Qasemi "for acting for or on behalf of the IRGC-QF and IRGC-QF Commander Qasem Soleimani." *Id.* Following the death of Soleimani in 2020, Qasemi "assumed a portion of former IRGC-QF Commander Qasem Soleimani's role in facilitating shipments of oil and petroleum products for the financial benefit of the IRGC-QF." *See* https://home.treasury.gov/news/press-releases/sm1165.

10.     According to OFAC, "[t]he Iranian Ministry of Petroleum has been used by individuals at the highest levels of the Iranian regime to facilitate the IRGC-QF's revenue generation scheme." *See* https://home.treasury.gov/news/press-releases/sm1165. On October 26, 2020, OFAC designated the Iranian Ministry of Petroleum pursuant to E.O. 13,224, as amended,

"for having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, the IRGC-QF." *Id.*

11. The Iranian Ministry of Petroleum oversees NIOC, which "is responsible for the exploration, production, refining, and export of oil and petroleum products in Iran." *See* https://home.treasury.gov/news/press-releases/sm1165. According to OFAC, NIOC is "an entity instrumental in Iran's petroleum and petrochemical industries, which helps to finance Iran's [IRGC-QF] and its terrorist proxies." *See* https://home.treasury.gov/news/press-releases/sm885. OFAC has found that NIOC supplies crude oil and condensate sold by the IRGC-QF. *See* https://home.treasury.gov/news/press-releases/sm767. On September 24, 2012, the U.S. Department of the Treasury submitted a report to Congress, as required by the Iran Threat Reduction and Syria Human Rights Act of 2012 ("ITRSHRA"), finding that NIOC was an agent or affiliate of the IRGC. *See* https://www.treasury.gov/press-center/press-releases/Pages/tg1718.aspx. On October 26, 2020, OFAC designated NIOC pursuant to E.O. 13,224 "for having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, the IRGC-QF." *See* https://home.treasury.gov/news/press-releases/sm1165.

12. NITC is a subsidiary of NIOC and "is responsible for the transportation of Iranian crude exports." *See* https://home.treasury.gov/news/press-releases/sm1165. According to OFAC, "NITC has also played a significant role in oil deals used to generate revenue for the IRGC-QF and Hizballah," *id.*, and has provided vessels for use in IRGC-QF oil operations, *see* https://home.treasury.gov/news/press-releases/sm767. NITC has used front companies to obscure its involvement in such oil shipments. *See* https://home.treasury.gov/news/press-releases/sm1165 ("Furthermore, in order to obfuscate its involvement in shipping activity, NITC set up a front

company in the United Arab Emirates (UAE), Atlas Ship Management. NITC officials also arranged to create a separate UAE-based front company, Atlantic Ship Management Company, ostensibly as an entity to replace Atlas Ship Management."). On November 5, 2018, OFAC designated NITC pursuant to E.O. 13,599 for its connections to the Government of Iran and its role in the Iranian shipping sector. *See* https://home.treasury.gov/news/press-releases/sm541. On October 26, 2020, OFAC designated NITC pursuant to E.O. 13,224 "for having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, the IRGC-QF." *See* https://home.treasury.gov/news/press-releases/sm1165.

### B.  IMPORTANCE OF PETROLEUM AND SHIPPING INDUSTRIES TO THE IRGC

13.  OFAC has observed that IRGC-QF deliberately utilizes a "complex network of intermediaries," including "dozens of ship managers, vessels, and facilitators," for the purpose of "obfuscate[ing] its involvement in selling Iranian oil." *See* https://home.treasury.gov/news/press-releases/sm767. In spring 2019 alone, one IRGC-QF-led network employed more than a dozen vessels to transport nearly 10 million barrels of crude oil and had taken steps to hide Iranian, IRGC, and NIOC involvement in certain transactions. *Id.* These shipments, taken collectively, sold for more than half a billion dollars. *Id.* The same network also sold nearly 4 million barrels of condensate and hundreds of thousands of barrels in gas oil, bringing in another quarter billion dollars. *Id.*

14.  In designating NIOC and NITC under E.O. 13,224, OFAC reported: "NIOC and NITC provide both the oil and tankers for the sale of Iranian oil by the IRGC-QF." *See* https://home.treasury.gov/news/press-releases/sm1165. "The cooperation and coordination between the IRGC-QF and these entities extends well beyond the simple sale of oil, including coordination between NIOC and the Central Bank of Iran to facilitate the collection of tens of millions of dollars in proceeds from the sale of oil that benefitted the IRGC-QF." *Id.*

15. According to OFAC, the IRGC uses the proceeds from its involvement in the oil industry and other sectors of the Iranian economy to "support the IRGC's full range of nefarious activities, including the proliferation of weapons of mass destruction (WMD) and their means of delivery, support for terrorism, and a variety of human rights abuses, at home and abroad." *See* https://home.treasury.gov/news/press-releases/sm703. OFAC has reported that "Iran's petroleum and petrochemical industries are major sources of revenue for the Iranian regime and funds its malign activities throughout the Middle East." *See* https://home.treasury.gov/news/press-releases/sm885. Then Treasury Secretary Steven T. Mnuchin added: "Iran's petrochemical and petroleum sectors are primary sources of funding for the Iranian regime's global terrorist activities and enable its persistent use of violence against its own people." *Id.*

### C. THE DEFENDANT PROPERTY ORIGINATED FROM KHARG ISLAND, IRAN, AND WAS LOADED ONTO THE NOSTOS VIA SHIP-TO-SHIP TRANSFER.

16. On November 5, 2018, OFAC placed an NITC-owned and operated oil tanker, the M/T STARK I (IMO No. 9171450) (the "STARK I"), on its Specially Designated Nationals and Blocked Persons List ("SDN List") due to STARK I's ties to NITC. *See* Notice of OFAC Sanctions Actions, 85 Fed. Reg. 18,334 (Apr. 1, 2020).

17. On or around, October 15, 2020, the STARK I repainted its deck in Bandar Abbas, Iran, in an apparent attempt to disguise the vessel and avoid detection by satellite imagery.

18. On or around October 31, 2020, the STARK I pulled into anchorage at Kharg Island, Iran, and loaded the Defendant Property.

19. On or around November 3, 2020, the STARK I loaded the Defendant Property onto petroleum tanker M/T ARINA (IMO No. 9189952) (the "ARINA") via ship-to-ship transfer. During this transfer the ARINA's Automatic Identification System ("AIS"), which transmits a

ship's position so that other ships are aware of its position and can avoid collisions, was turned off. The ARINA's AIS resumed functioning on November 5, 2020.

20.  The ARINA has been an active carrier of Iranian oil, having previously loaded and shipped Iranian petroleum in both November 2019 and June 2020. For example, approximately six months before the ARINA obtained the Defendant Property, it engaged in a similar illicit shipment of Iranian petroleum from Kharg Island, Iran, which was similarly transferred via ship-to-ship transfer from an Iranian-flagged tanker, and false documents were created to show the petroleum was of Omani-origin. NIOC served as the consignor for that shipment.

21.  On August 26, 2021, the ARINA transferred the Defendant Property, approximately 220,793 barrels of Iranian crude oil, that it previously received from the NITC-owned-and-operated STARK I to the NOSTOS in a ship-to-ship transfer that took place approximately 26 kilometers off the coast of Limassol, Cyprus. Shipping documents associated with this transfer sought to conceal its illicit nature by fraudulently claiming that the crude oil originated from Oman.

## COUNT ONE – FORFEITURE
### (18 U.S.C. § 981(a)(1)(G)(i))

22.  The United States incorporates by reference the allegations set forth in Paragraphs 1 to 21 above as if fully set forth herein.

23.  The IRGC and IRGC-QF are designated foreign terrorist organizations that have engaged in planning and perpetrating federal crimes of terrorism as defined in 18 U.S.C. § 2332b(g)(5) against the United States, citizens or residents of the United States, or their property.

24.  As described above, the Defendant Property is ultimately an asset of NITC, which was being sold on behalf of the IRGC or IRGC-QF. In transferring the Defendant Property for the purposes of sale, NITC provided or attempted to provide resources to IRGC or IRGC-QF, in

violation of 18 U.S.C. § 2339B(a)(1). The Defendant Property is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(i), as an asset of NITC, an entity that engaged in the planning and perpetration of a federal crime of terrorism—providing material support to a foreign terrorist organization.

25. Further, the Defendant Property provides a source of influence over entities and organizations—namely, NITC, the IRGC, and IRGC-QF—engaged in the planning and perpetration of federal crimes of terrorism the meaning of 18 U.S.C. § 981(a)(1)(G)(i).

\* \* \*

## **PRAYER FOR RELIEF**

WHEREFORE, the United States prays that notice issue on the Defendant Property as described above; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring that the Defendant Property be forfeited to the United States for disposition according to law; and that the United States be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: October 22, 2021
Washington, D.C.

                                      Respectfully submitted,

                                      CHANNING D. PHILLIPS
                                      Acting United States Attorney

By:       */s/ Derek S. Hammond*
       KAREN P. W. SEIFERT
       N.Y. Bar No. 4742342
       DEREK HAMMOND
       D.C. Bar No. 1017784
       Assistant United States Attorneys
       555 Fourth Street, NW
       Washington, DC 20530
       (202) 252-7566 (main line)
       Derek.hammond@usdoj.gov

*Attorneys for the United States of America*

## VERIFICATION

I, Matthew Harris, a Special Agent with the Homeland Security Investigations, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct.

Executed on this 22nd day of October, 2021.

_____*/s/ Matthew Harris*_____
Special Agent Matthew Harris
Homeland Security Investigations


I, Cindy Burnham, a Special Agent with the Federal Bureau of Investigation, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct.

Executed on this 22nd day of October, 2021.

_____*/s/ Cindy Burnham*_____
Special Agent Cindy Burnham
Federal Bureau of Investigation